1  John P. Kristensen (SBN 224132)
   David L. Weisberg (SBN 211675)
2  **KRISTENSEN WEISBERG, LLP**
3  12540 Beatrice Street, Suite 200
   Los Angeles, California 90066
4  Telephone: (310) 507-7924
5  Fax: (310) 507-7906
   *john@kristensenlaw.com*
6  *david@kristensenlaw.com*
7
8  *Attorneys for Plaintiff and all others*
   *similarly situated*

9

## THE UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

11

| | |
|---|---|
| 12  ADRIAN BACON, on behalf of himself and all others similarly situated, | Case No.: |
| 13 | **CLASS ACTION** |
| 14          Plaintiffs, | |
| 15 | **PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| 16          vs. | |
| 17  MATRIX WARRANTY SOLUTIONS, INC, a Texas corporation; and DOE INDIVIDUALS, inclusive, and each of them, | (1)   Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (Cell Phone); |
| 18 | |
| 19 | (2)   Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (DNC Class); and |
| 20 | |
| 21          Defendants. | |
| 22 | (3)   Violations of California Invasion of Privacy Act, Cal. *Penal Code* § 632.7. |
| 23 | |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |

26        Plaintiff Adrian Bacon ("Bacon" or "Plaintiff"), on behalf of himself and

27  all others similarly situated, alleges the following upon information and belief

28  based upon personal knowledge:

## NATURE OF THE CASE

1.     Plaintiff, on behalf of himself and all others similarly situated, is seeking damages and any other available legal or equitable remedies resulting from the illegal actions of defendant MATRIX WARRANTY SOLUTIONS, INC. ("Matrix" or "Defendant") and INDIVIDUAL DOES (collectively "Defendants") in contacting Plaintiff, as well as knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *set* seq. ("TCPA") and California's Invasion of  Privacy Act, Cal. *Pen. Code* § 632.7.

2.     Defendant Matrix is an entity that regularly engages in aggressive and reckless marketing as an agent for automotive warranty policies while outright ignoring controlling federal law, and the rights of the called party, and running roughshod over California's stringent two caller consent recording policy.

3.     Defendants conducted (and continue to conduct) wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry— without consent, all in violation of the TCPA.

4.     Defendants continued the calls, even after Plaintiff explicitly told them to stop and revoked any purported assent to receive the illegal calls.

5.     By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

6.     Plaintiff brings this class action against Defendants to secure redress because Defendants willfully violated the TELEPHONE CONSUMER PROTECTION

ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' telephones through the use of an auto-dialer and/or artificial or pre-recorded voice message.

7.   Plaintiff, further, brings this class action against Defendants for illegally recording calls to California's cellular phones.

8.   By making the telephone calls (and recordings) at issue in this Complaint, Defendants caused Plaintiff actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to his carrier(s) for the receipt of such telephone calls.

9.   Congress enacted the TCPA to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all illegal telephone calling activities to his cellular telephone, and other individuals' cellular phones and an award of statutory damages under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees (including under Cal. *Code Civ. Proc.* § 1021.5), and treble damages (for knowing and/or willful violations). Plaintiff also seeks an award of court costs and reasonable attorneys' fees.

10.   California enacted its strict Invasion of Privacy Act to preclude recording of cellular calls, at the outset of the calls, without both parties' consent. It is a criminal act.

## JURISDICTION & VENUE

11.   Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because the Plaintiff, a resident of California, seeks relief on behalf of a Class, which will result in at least one class member belonging to a different state than that of the Defendants.

///

12.     Plaintiff also seeks up to $500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class in the thousands, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

14.     Plaintiff's state law claim for relief is within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).

15.     The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

17.     Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their marketing efforts and services that target this District, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## PARTIES

18.     Plaintiff Bacon is a citizen of the State of California who resides in Orange County, California.

19.     Defendant Matrix is a corporate entity registered in Nevada, yet maintains its principal place of business at 3100 McKinnon Street, Suite 440, Dallas, Texas 75201. It regularly conducts business in this District. Matrix can be served with process by serving its registered agent, CT Corporation System,

1999 Bryan Street, Suite 900, Dallas, Texas 75201. Matrix also goes by the fictitious name, Element Protection Plans, which is run out of the same office.

20. The true names and capacities of the Defendants sued herein as DOE INDIVIDUALS, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

21. Plaintiff does not yet know the identity of Defendants' employees/agents, identified as DOE INDIVIDUALS that had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. They are named tentatively as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415–416 (D.Md. 2011); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. CIV.A. 01-0004360, 2003 WL 21384825, at *6 (D.C. Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *16–17 (N.D. Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

22.   Plaintiff is informed and believes and thereon alleges that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was the owner, agent, servant, joint venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

23.   At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

## TELEPHONE CONSUMER PROTECTION ACT

24.   Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[1] The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

25.    Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods. *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually . . . using those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

26.    The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional

call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

27.     Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012).

28.     The TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

29.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

30.     As of October 16, 2013, unless the recipient has given prior express written consent,[2] the TCPA and FCC rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry.

///

///

---

[2]     Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

31.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules."  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier*, *supra*, 2012 WL 7062748.

32.    Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

A.    DO NOT CALL VIOLATIONS OF THE TCPA

33.    More Than One Call within Any 12 Month Period. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

34.    Calls to Residential Lines on the Do Not Call List. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

35.    Or, Wireless Lines on the Do Not Call List. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c)

and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

36.   The Affirmative Defense of Prior Express Consent. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). "Prior express consent is an affirmative defense for which the defendant bears the burden of proof." *See Grant v. Capital Management Services, L.P.*, No. 11-56200, 2011 WL 3874877, at *1 n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); *see also Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

37.   Telemarketers Must Maintain a List of Persons Requesting Not to Receive Calls. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

///

///

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made) and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

# FACTUAL ALLEGATIONS

38.     At no point in time did Plaintiff provide Defendants with his express written consent to be contacted using an ATDS.

39.     Plaintiff is the subscriber and/or sole user of the cellular telephone, at (714) 328-****.

40.     Beginning in or about August 2018, Defendants began contacting Plaintiff using a pre-recorded voice that would respond based on Plaintiff's responses. Eventually, the calls would lead to actual call operators.

41.     At no time did Plaintiff ever agree to the calls, or agree to having the calls recorded.

42.     On September 7, 2018 at approximately 4:39 p.m., Defendants contacted Plaintiff asking about his Cadillac (Plaintiff does not own a Cadillac) on his cellular telephone *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), without first obtaining Plaintiff's consent. The call was made with a pre-recorded voice. The call was from (562) 222-3890.

43.     On September 21, 2018, at approximately 10:19 a.m. Defendants contacted Plaintiff asking about his Cadillac (Plaintiff does not own a Cadillac) on his cellular telephone *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), without first obtaining Plaintiff's consent. The call was made with a pre-recorded voice. The call was from (626) 314-1798.

44.     On September 26, 2018, at approximately 1:53 p.m., Defendants contacted Plaintiff asking about his Cadillac (Plaintiff does not own a Cadillac) on his cellular telephone *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), without first obtaining Plaintiff's consent. The call was made with a pre-recorded voice. The call was from (530) 240-4824.

45.     On September 28, 2018, at approximately 1:53 p.m., Defendants contacted Plaintiff asking about his Cadillac (Plaintiff does not own a Cadillac) on his cellular telephone *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), without

first obtaining Plaintiff's consent. The call was made with a pre-recorded voice. The call was from (559) 774-6863.

46.     On October 1, 2018, at approximately 4:15 p.m., Defendants contacted Plaintiff asking about his Cadillac (Plaintiff does not own a Cadillac) on his cellular telephone *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), without first obtaining Plaintiff's consent. The call was made with a pre-recorded voice. The call was from (747) 204-7567.

47.     The calls continued even after Plaintiff told them he was not interested in their offer and to take him off their lists. Plaintiff's number has been on the do not call list since well before the calls started.

48.     When Plaintiff answered the phone, he experienced dead air and a computer-generated voice.

49.     To the extent Plaintiff ever consented to the calls, he revoked such consent but the calls continued.

50.     Plaintiff was extremely frustrated by the calls and wanted Defendants to stop calling. The calls invaded his privacy and used up capacity on his cellular plan.

51.     On information and belief, Defendants' automated system had called Plaintiff on every occasion.

52.     Based on the circumstances of the calls – including but not limited to the multiple calls, Defendants called despite Plaintiff's requests to Defendants to stop calling (indicating a computer automatically dialed the number again) – Plaintiff believes Defendants called his cellular telephone using an ATDS that automatically selected his number from a computer database that had the ability to store numbers

53.     On information and belief, Defendants' ATDS called Plaintiff on every occasion.

///

54.    On information and belief, and based on the circumstances of the all the calls, Defendants called Plaintiff using an ATDS.

55.    Plaintiff understood the purpose of Defendants' calls was to solicit business from Plaintiff.

56.    The telephone number Defendants called Plaintiff was assigned to a cellular telephone.

57.    Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

58.    Plaintiff did not provide Defendants with prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

59.    All calls Defendants made to Plaintiff violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

60.    All of the calls were recorded. Defendants failed to inform Plaintiff the calls were being recorded, which is illegal for cellular calls in a two part consent state such as California.

61.    Plaintiff seeks an injunction requiring Defendants to cease all illegal, abusive, and harassing telephone calls using an ATDS and an award of statutory damages, together with costs and reasonable attorneys' fees. Plaintiff, once he learns the identity of DOE INDIVIDUALS, will seek an appropriate injunction that will at a minimum require DOE INDIVIDUALS to cease all illegal, abusive, and harassing telephone calls using an ATDS and confirm with this Court they are doing so with any future employer or entity with whom they are engaged.

## STANDING

62.    Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because

Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendants; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Robins v. Spokeo,* 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554 (Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

## A.   INJURY IN FACT

63.    A Plaintiff's injury must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution. *Id.*

64.    For an injury to be concrete it must be a de facto injury, meaning it actually exists.  In the present case, Plaintiff took the affirmative step of enrolling himself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to his telephone.  Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff.  *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  All three of these injuries are present in this case.  *See also Chen*, *supra*.

65.    Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.  *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

66.    For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* , 136 S.Ct. at 1548. In

the instant case, Defendants placed calls to Plaintiff's phone. It was Plaintiff's personal privacy and peace that Defendants invaded by placing the calls to his phone.  Furthermore, Plaintiff is the person who pays for the phone, and is the regular carrier and user of the phone.  All of these injuries are particular to Plaintiff.

**B.    TRACEABLE TO THE CONDUCT OF DEFENDANT**

67.    Plaintiff must allege at the pleading stage of the case facts to show that his injury is traceable to the conduct of Defendants.  In this case, Plaintiff satisfies this requirement by alleging that Defendants, and/or agent of Defendants on behalf of Defendants, placed illegal calls to Plaintiff's phone.

**C.    INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

68.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

69.    Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo*, Plaintiff has standing to sue Defendants on the stated claims.

///

///

///

///

## CLASS ALLEGATIONS

70.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or other applicable law, on behalf of themselves and all others similarly situated, as a member of three proposed classes (hereafter "the DNC Class," the "Cellphone Class," and the "632.7 Recorded Class").

71.     The Cellphone Class is defined as follows:

All persons within the United States who received any telephone calls from Defendant(s) to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously provided express consent to receiving such calls within the four years prior to the filing of this Complaint.

72.     Excluded from the Cellphone Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Cellphone Class are any judges, justices or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

73.     The DNC Class is defined as follows:

All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendants within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendants had no consent to place such calls within the four years prior to the filing of this Complaint.

74.     Excluded from the DNC Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-

conspirators, successors, subsidiaries, and assigns. Also excluded from the Cellphone Class are any judges, justices or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

75.    The 632.7 Recorded Class is defined as follows:

All persons within California whose inbound and outbound telephone conversations were recorded without their consent by Defendant(s), and wherein a cellular or cordless device was used by at least one party to the conversation, within one year prior to the filing of the Original Complaint.

76.    Excluded from the 632.7 Recorded Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the 632.7 Recorded Class are any judges, justices or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

77.    Plaintiff reserves the right to expand or further define the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

78.    Plaintiff and members of the Classes were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC and/or illegal contacted Plaintiff and the Class members on their cellular phones.

79.    This action is properly maintainable as a class action. This action satisfies the numerosity, typicality, adequacy, predominance and superiority for a class action.

80.    **Numerosity**: The proposed Classes are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and

commerce involved, Plaintiff does not know the number of members in the Classes, but believes the Class members number in the thousands, if not more. Plaintiff alleges that the Class may be ascertained by the records maintained by Defendants and/or third party vendors.

81.     Plaintiff and members of the Classes were harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiff and Class members via their telephones thereby causing Plaintiff and Class members, without their "prior express consent," to incur certain charges or reduced telephone time for which Plaintiff and Class members had previously paid by having to retrieve or administer message(s) left by Defendant during those illegal calls, and invading the privacy of said Plaintiff and Class members.

82.     **Common Questions of Law and Fact Predominate**: There are only a few legal and factual issues to determine if there is liability under the TCPA and for each of those questions of law and fact, common issues to the Class predominate over any questions that may affect individual Class members, in that the claims of all Class members for each of the claims herein can be established with common proof. Common questions of fact and law include, but are not limited to, the following:

> (a)     Whether, within the four years prior to the filing of this Complaint, Defendants made any calls (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automated dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

> (b)     Whether, within the four years prior to the filing of this Complaint, Defendants made any calls (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automated

dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

(c) Whether Defendants recorded the calls with the members of the 632.7 Recorded Class

(d) Whether Defendants systematically made telephone calls to consumers whose telephone numbers were registered with the National do Not Call Registry;

(e) Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

(f) Whether Plaintiff and the Class members were damaged thereby, and the extent of the statutory damages for each such violation; and

(g) Whether the Defendant(s) should be enjoined from engaging in such conduct in the future.

83.  **Typicality**:  Plaintiff's claims are typical of the claims of members of the Classes, as Plaintiff was subject to the same common course of conduct by Defendants as all Class members. The injuries to each member of the Class were caused directly by Defendants' wrongful conduct as alleged herein.

84.  **Adequacy of Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation. Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have financial resources to do so.

85.  **Superiority of Class Action**:  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Class members have little interest in individually controlling the prosecution of separate actions because the individual damage claims of each Class member are not substantial enough to warrant individual filings. In sum,

for many, if not most, Class members, a class action is the only feasible mechanism that will allow them an opportunity for legal redress and justice. Plaintiff is unaware of any litigation concerning the present controversy already commenced by members of the Class. The conduct of this action as a class action in this forum, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

86.     Moreover, individualized litigation would also present the potential for varying, inconsistent, or incompatible standards of conduct for Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. The adjudication of individual Class members' claims would also, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

87.     Plaintiff and the members of the Classes have suffered and will continue to suffer harm as a result of Defendants' unlawful and wrongful conduct. Defendants have acted, or refused to act, in respects generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,

### 47 U.S.C. § 227, *ET SEQ.*

### (By Plaintiff Against All Defendants)

88.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

///

89.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

90.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

91.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

92.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

### DNC CLAIM IN VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*

### (By Plaintiff Against All Defendants)

93.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

94.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

95.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)— provides that "[n]o person or entity shall initiate any telephone solicitation" to

"[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

96.     47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

97.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

98.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of

persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

99.     Defendants made more than one unsolicited telephone call to Plaintiff and members of the DNC Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the DNC Class never provided any form of consent to receive telephone calls from Defendants do not have a record of consent to place telemarketing calls to them and/or Plaintiff and members of the DNC Class revoked consent.

100.     Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

101.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC Class and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

102.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

103.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

///

///

### THIRD CAUSE OF ACTION

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT,**

**CAL. *PENAL CODE* § 632.7**

**(By Plaintiff Against All Defendants)**

104.   Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

105.   Californians have a constitutional right to privacy. Moreover, the California Supreme Court has definitively linked the constitutionally protected right to privacy within the purpose, intent and specific protections of the Privacy Act, including specifically, Cal. *Penal Code* § 632. In addition, California's explicit constitutional privacy provision (Cal. Const., 1 § 1) was enacted in part specifically to protect California from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy. Thus, Plaintiff believes that California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of section 632 prohibiting the recording of telephone conversations without the knowledge or consent of all parties to the conversation.

106.   Cal. *Penal Code* § 632.7 prohibits in pertinent part "[e]very person who, without the consent of all parties to a communication . . . intentionally records, or assists in the . . . intentional recordation of, a communication transmitted between . . . a cellular radio telephone and a landline telephone." Thus, on its face, Cal. *Penal Code* § 632.7 precludes the recording of all communications involving a cellular telephone.

///

///

///

///

107.   Though similar, Cal. *Penal Code* § 632 and 632.7 are not duplicative and protect separate rights. Cal. *Penal Code* § 632.7 grants a wider range of protection to conversations where one participant uses a cellular phone or cordless phone. For example, the "confidential communication" requirement of Cal. *Penal Code* § 632 is absent from Cal. *Penal Code* § 632.7.

108.   Defendants caused to be employed certain recording equipment on the telephone lines of all employees, officers, directors, and managers of Defendants.

109.   Plaintiff is informed and believes, and thereupon alleges, that all these devises were maintained and utilized to record each and every outgoing telephone conversation over said telephone lines.

110.   Said recording equipment was used to record the telephone conversations of Plaintiff and the members of the Class utilizing cellular telephones, all in violation of Cal. *Penal Code* § 632.7.

111.   Based on the foregoing, Plaintiff and the members of the Class are entitled to, and below herein do pray for, their statutory remedies and damages, including but not limited to, those set forth in Cal. *Penal Code* § 632.7; and Cal. *Penal Code* § 637.2.

112.   Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff and the Class seek recovery of their attorneys' fees pursuant to the private attorney general doctrine codified in Cal. *Code Civ. Proc*. § 1021.5, or any other statutory basis.

113.   Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for relief and judgment as follows:

(a)   An order certifying the Classes as defined above, appointing

Plaintiff as the representative of the Classes, and appointing their counsel, KRISTENSEN WEISBERG, LLP as lead Class Counsel;

(b)     An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

(c)     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

(d)     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the 632.7 Recording Class pursuant to Cal. *Penal Code* § 632;

(e)     An injunction requiring Defendants and Defendants' agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A) and to stop recording calls with members of the 632.7 Recording Class;

(f)     Pre-judgment and post-judgment interest on monetary relief;

(g)     An award of reasonable attorneys' fees and court costs; and

(h)     All other and further relief as the Court deems necessary, just, and proper.

Dated:  October 2, 2018                     Respectfully submitted,

                                By:  */s/ John P. Kristensen*
                                _____

                                John P. Kristensen (SBN 224132)
                                *john@kristensenlaw.com*
                                **KRISTENSEN WEISBERG, LLP**
                                12540 Beatrice Street, Suite 200
                                Los Angeles, California 90066
                                Telephone:  (310) 507-7924
                                Fax:  (310) 507-7906

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury for all issues that may be decided by jury.

Dated:  October 2, 2018                    Respectfully submitted,

By:  */s/ John P. Kristensen*
_____

John P. Kristensen (SBN 224132)
*john@kristensenlaw.com*
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  (310) 507-7924
Fax:  (310) 507-7906